33 C.C.P.A. (Patents)

## Application of STINSON.
## Patent Appeal No. 5083.

Court of Customs and Patent Appeals.
March 4, 1946.

Hammond & Littell, of New York City (Charles P. Pollard and Nelson Littell, both of New York City, and Francis G. Cole, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed a decision of the Primary Examiner rejecting, in view of the prior art, claims 2, 4, 5, 15 and 16 of an application for a patent for "Method of Bleaching Barytes." Six claims were allowed. From the decision of the board this appeal was taken.

The references cited are:

Ebers, 1,709,612, April 16, 1929;

De Lore et al., 1,783,778, December 2, 1930;

Phillips, "Mineralogy," pages 528–530.

Claim 5 is illustrative of the subject matter, and appellant in his oral argument stated that all the rejected claims stand or fall together. It reads as follows:

"5. The method of bleaching raw barytes containing impurities including pyrite, galena and organic matter which comprises subjecting the raw barytes to the action of an agent consisting of a hot solution containing both sulfuric acid and a strong oxygen-introducing oxidizing agent capable of oxidizing and which does oxidize the pyrite to ferric sulfate, galena to lead sulfate and organic matter to carbon monoxide and carbon dioxide for a period of several hours until such oxidation is effected, and washing out said solution."

The invention discloses a process for the treatment of barytes, also referred to in the record as barium sulfate, barite, or heavy spar. Barytes is found in limestone, clay, and in lead, zinc, iron and other ores.

Its color is white or any "pale shades of yellow, green, blue, brown, or red." Discoloration in the mineral by reason of impurities is lessened and the product rendered white by the process. The finished article is used in the manufacture of paints, rubber, oilcloth and the like.

The process here involved consists in placing the ground raw ore in an aqueous solution of sulfuric acid and a strong oxidizing agent, such as chromates, permanganates, soluble dichromates, nitrates, chlorides, perchlorides, and peroxides, and heating until the impurities in the barytes, which include pyrite, galena and organic matter, have been reacted and the barytes rendered substantially colorless.

The Ebers patent discloses a bleaching process for raw heavy spar. That process, which removes impurities stated to consist mainly of iron compounds and organic matter, results in what is said to be a pure white pigment. The patentee employs sulfuric acid and niter as an oxidizing agent. He states that a perfectly white color is produced in his process by means of sulfuric acid in the presence of fluorspar, whether the same be contained in the barite or be added to it. According to the process, ground ore is boiled in sulfuric acid of 20 per cent strength for a half hour and subsequently washed with water. In case the barite is very impure it is mixed with 5 per cent of fluorspar, roasted, and stirred in a fourth of its weight of sulfuric acid, 20 per cent strong, and enough water added in order that the mixture may be stirred. The use of niter is stated with reference to its effect on organic foreign matter and may be added at any time. After boiling, the material is washed with water.

The Phillips reference contains a general description of barite, as being found in veins of lead or zinc ores, and in veins containing sulfides. It is said to be deposited there by the interaction of waters carrying barium in solution in either chloride or bicarbonate form, with soluble sulfates, such as gypsum, or pyrite.

In view of our conclusion, it is not necessary to consider the patent to De Lore et al.

The claims were rejected by the examiner as being substantially met by the Ebers patent. That rejection was affirmed by the board, which pointed out that the claims as worded do not require the omission of the calcium fluoride (fluorspar) of the Ebers patent, for the reason that it is stated in the claims that raw barytes is acted upon by an agent "consisting of a hot solution containing both sulfuric acid and a strong oxygen-introducing oxidizing agent." This wording clearly would admit the presence of fluorspar in the hot solution.

Appellant contends the distinctive features of the claims to be that the ore is raw in his process when subjected to the chemical treatment; that it contains pyrite galena and organic matter; that it is reacted by a hot solution containing sulfuric acid and a strong oxidizing agent; that in the treatment or process the pyrite is oxidized to ferric sulfate and the galena to lead sulfate; and that a time period of several hours is necessary to effect the oxidation. The record is barren of evidence to show that those distinctions are critical. The process of Ebers and that of appellant are substantially similar in that they seek to obtain pure white color from the purification of raw barite, and both use sulfuric acid and an oxidizing agent.

■ There can be no doubt that the Ebers reference discloses the use of raw material. All of his claims set out a process of producing "white heavy spar from raw heavy spar." This process consists in treating the raw material in the presence of fluorspar and niter with sulfuric acid, as shown in claim 6 of the patent. It is proper to consider a patent claim as part of the disclosure, even though, as here, it was not referred to by the tribunals of the Patent Office. In re Mosher, 79 F.2d 911, 23 C.C. P.A., Patents, 740.

From the foregoing we think it is clear that the patent to Ebers shows that raw barite is always treated with sulfuric acid and, for better results, niter (potassium nitrate) as a strong oxidizing agent may be introduced.

While it is true that no mention of pyrite by name is found in the Ebers patent, among the impurities set out therein "iron compounds" are mentioned, and of course pyrite is an iron compound, known as iron sulfide. Furthermore, the Phillips reference points out that barite frequently contains sulfides, mentioning pyrite, so that we think it reasonable to assume that it is one of the "iron compounds" mentioned in the Ebers patent.

Galena (lead sulfide) is not mentioned in the patent, but according to the Phillips reference lead ores are common impurities in barite, and appellant in his specification

mentions barytes as the gangue or foreign matter with lead ore. Furthermore, we find nothing in the patent excluding barite containing galena from the process there disclosed. Therefore, we are of opinion that the mention of pyrite and galena in the rejected claims is not a patentable distinction over the reference.

We cannot agree with appellant that the wording of the claims excludes the presence of fluorspar, which is said to be present in the Ebers material. It may well be that fluorspar is contained in the barite of appellant, to which his process is applied, and the wording of the claims that the agent consists of a hot solution "containing both sulfuric acid and a strong oxygen-introducing oxidizing agent" does not exclude the presence of fluorspar. Nowhere in the claims is fluorspar expressly excluded from the process, and since it is indicated in the patent that fluorspar may be one of the impurities of barite the statement in the claims of "barytes containing impurities including pyrite, galena and organic matter" would, in our opinion, certainly allow for its presence.

One of the distinctive features alleged by appellant is that the impurities pyrite and galena are oxidized to ferric sulfate and lead sulfate, respectively. Those sulfates are the normal products of those materials in the normal process of oxidation, and their production was held by the board to be inherent in the Ebers process. Such holding was not challenged by appellant, under Rule 66, 35 U.S.C.A. Appendix, and therefore its accuracy cannot now be attacked. In re Lewis, 96 F.2d 1009, 25 C.C.P.A., Patents, 1273. Therefore the board's finding in that respect should be and is accepted here as proper.

We see no merit in appellant's claimed distinction that the period of treatment with his hot solution continues over "several hours until such oxidation is effected." Some of the claims call for such length of time. In one of the examples set forth in the Ebers patent the time for heating the barite and acid solution is suggested to be "about half an hour." We find nothing in the record to show any difference, either critical or material, between the heating period of the patent and that set out by appellant. As properly pointed out by the board, appellant's specification speaks of a period of several hours only in examples where dichromates are used as oxidizing agents, and the specification mentions that the description is merely illustrative and not intended to define inventive limits. Therefore, we hold that the specified time for heating cannot properly be the basis for the allowance of those claims.

Since the rejected claims present no patentable distinction over the Ebers patent, the decision of the Board of Appeals is affirmed.

Affirmed.